**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------x

MICHAEL KRANTZ,

                      Plaintiff,

        -against-

HSBC SECURITIES (USA) INC.,

                      Defendant.

------------------------------------------------------------------------x

Case No.:

**VERIFIED COMPLAINT**

**PLAINTIFF DEMANDS**
**A TRIAL BY JURY**

Plaintiff MICHAEL KRANTZ, by and through his attorneys, White & Hilferty, hereby complains of Defendant HSBC SECURITIES (USA) INC., upon information and belief as follows:

## NATURE OF THE CASE

1.     Plaintiff brings this action alleging that Defendant has violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.,* the New York State Human Rights Law, N.Y. Exec. Law 290. *et seq.*, and the New York City Human Rights Law, N.Y. Admin Code 8-107, *et seq.* and seeks damages to redress the injuries he has suffered as a result of being discriminated against on the basis of his religion and familial status as well as retaliated against following Plaintiff's engagement in protected activity.

## JURISDICTION & VENUE

2.     Jurisdiction of this Court is proper under 42 U.S.C. § 2000, *et seq.*, and 28 U.S.C. §§ 1331 and 1343.

3.     The Court has supplemental jurisdiction over Plaintiff's claims brought under state law pursuant to 28 U.S.C. § 1367.

4.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) as it is a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

## PROCEDURAL REQUIREMENTS

5.      On April 27, 2023, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (Charge No.: 520-2023-04269).

6.      Plaintiff's EEOC Charge asserted the same and/or similar factual allegations that are asserted in this Verified Complaint.

7.      On June 15, 2023, the EEOC issued the Dismissal and Notice of Rights.

8.      Plaintiff has filed this action within 90 days of receipt of the Notice of Rights.

9.      Plaintiff timely and properly filed this suit after exhausting all administrative remedies with the EEOC.

10.     Plaintiff now seeks to file this Verified Complaint with this Court.

## THE PARTIES

11.     Plaintiff was and is a resident of the State of New Jersey, County of Bergen. Plaintiff is a Jewish male who has children.

12.     Defendant is an employer as defined by 42 U.S.C. § 2000e, *et seq.*, N.Y. Exec. Law § 290, *et seq.*, and N.Y. Admin Code § 8-102, *et seq.* Defendant employs fifteen (15) or more employees. Defendant's business address is 452 Fifth Avenue, New York, New York 10018.

13.     At all times relevant, Defendant owned, operated, and/or maintained its place of business in the State of New York, County of New York.

**MATERIAL FACTS**

14.     Plaintiff is a Jewish male who has children.

15.     On August 17, 2021, Defendant hired Plaintiff as an Investment Banking Analyst in the Global Banking AIBC Division. In March 2022, Defendant promoted Plaintiff to Investment Banking Associate and afforded him a raise based upon his exemplary qualifications and performance. In March 2023, Defendant promoted Plaintiff to Second Year Investment Banking Associate.

16.     Throughout his employment, Plaintiff performed his job duties in an exemplary manner as supported by his multiple promotions and exemplary qualifications. Notably, Plaintiff never received any performance-related disciplinary citations during his employment with Defendant.

17.     In September 2021, Defendant staffed Plaintiff on Project "P." This staffing occurred around the same time of the Jewish holidays of Rosh Hashana and Yom Kippur. Plaintiff ensured to mention his religious obligations to Staffer Brian Silva. Plaintiff then notified Vice President of Industrials Izzah Rahman regarding his religious obligations and need for time off. Rahman was required to staff other employees on the project, which caused her to become frustrated with Plaintiff. Rahman then directed Plaintiff to ask Silva to find a replacement and/or additional staffing due to Plaintiff's inability to work on the Jewish holidays.

18.     Thereafter, Rahman discriminated against Plaintiff by reducing his staffing and assigning him to less attractive work than his non-Jewish colleagues, which significantly reduced the bonus potential to which Plaintiff was entitled.

19.     At the end of 2021, Plaintiff ranked his top three choice groups in which he wanted to be placed. Plaintiff's first choice was the Chemicals group. Defendant advised the employees,

including Plaintiff, that while they cannot promise their top pick, they were guaranteed one of their top three choices. Plaintiff had positive conversations with the leaders of his top three groups.

20.     In early 2022, Silva advised Plaintiff that he would not be selected for the Chemical's Team solely due to purported shifting of budgets.  As a result, Defendant assigned Plaintiff to the Industrials team, which was not ranked among Plaintiff's top three groups. Plaintiff was required to accept the placement to avoid termination of his employment. Silva explicitly acknowledged that Plaintiff was the only employee who did not get placed within their requested group. Clearly, Defendant subjected Plaintiff to disparate treatment in the terms and conditions of his employment due his religious faith.

21.     In March 2022, Defendant promoted Plaintiff to Investment Banking Associate. Plaintiff worked on the Industrials Team, which was managed by Greg Melconian and staffed by Rahman.

22.     In or around the same time, Defendant scheduled a breakfast event for newly promoted associates to speak with management about the associate track. Plaintiff immediately requested accommodations for Defendant to provide him with Kosher options during the breakfast event. Ultimately, Defendant discriminatorily ignored Plaintiff's request and failed to offer Plaintiff Kosher options. As a result, Plaintiff was unable to eat during the event.

23.     During the Summer 2022 Intern Program, Rahman repeatedly denied Plaintiff's offers to assist with the program in favor of Plaintiff's similarly situated non-Jewish colleagues despite the fact that Plaintiff's request to assist in such programs improves standing in determining year-end variable pay/bonuses.

24.     In Fall 2022, Plaintiff disclosed to colleagues and leadership (Melconian, Rahman, Adam Frapart, and Stephen Lande) that he and his wife were expecting a child and mentioned that he intended to take parental leave upon the birth of his child during Spring 2023.

25.     Following Plaintiff's request for parental leave, Defendant further discriminated against Plaintiff by, among other things, reducing the amount of work that he was assigned and assigning him to less attractive staffings as compared to his similarly situated non-Jewish colleagues who did not request parental leave. Specifically, Rahman staffed Plaintiff on a single project between October and December 2022 despite that there were other staffings that required additional staffing. When Plaintiff addressed the matter with Rahman, she merely dismissed his concerns and claimed that there was nothing new for him to work on despite the fact that Plaintiff's colleagues continued to receive multiple new assignments. Said colleagues voice their confusion as to why such assignments were not given to Plaintiff given their capacity.

26.     In October 2022, Defendant finally staffed Plaintiff on a project. During said project, Rahman unjustifiably scrutinized Plaintiff's work, which was agreed to be unreasonable by other colleagues. During the same time, Plaintiff spoke with Melconian regarding taking the CFA exam as all managerial and financial decisions also needed to be discussed/approved through Melconian. It was common knowledge that Defendant paid for the CFA exam for other employees. However, Melconian refused to authorize Defendant to pay for Plaintiff to take the CFA exam on the pretextual basis that it was not needed for Plaintiff's position while later claiming in Plaintiff's annual review that his technical skills were lacking. Melconian also questioned why Plaintiff wanted to take the exam in February and not May 2023. Plaintiff explain that his wife was due to deliver their baby in or around April or May 2023, and therefore, he wanted to focus on his child's birth and bond with the child following said birth.

27.     After the end of the project, Defendant again failed to staff Plaintiff on a project. Plaintiff consistently reached out to Rahman asking for work. In response, Rahman claimed that when work became available, she would assign Plaintiff; however, she never did. Rahman also berated Plaintiff about submitting his staff sheet on Mondays. Plaintiff then spoke with his similarly situated colleagues and learned that they were not required to submit their respect staff sheets every Monday and were not harassed by Rahman regarding said submissions.

28.     On January 11, 2023, Plaintiff met with Melconian and Rahman for his 2022 performance review. During said meeting, Melconian and Rahman accused Plaintiff of pretextual performance deficiencies, despite never before voicing such concerns to Plaintiff. While they noted that Plaintiff's ranking was good, they claimed that there were issues with Plaintiff's performance. Nevertheless, Melconian and Rahman issued Plaintiff a positive performance review. Plaintiff then asked for additional staffing and specifically mentioned that he wanted more staffing before he took paternity leave in at the end of April or early May 2023. Following the meeting, Rahman further discriminated against Plaintiff by continuing to reduce his assignments.

29.     In February 2023, Defendant issued Plaintiff's bonus, which was the lowest bonus on the team and in the entire AIBC for associates, due to its discriminatory animus against him based upon his religious faith and intention to utilize parental leave. Notably, Plaintiff's bonus was lower than the bonuses awarded to analysts who had the same ranking as Plaintiff.

30.     On March 2, 2023, during a mandatory volunteer event, Rahman discriminatorily stated, "You aren't planning on taking all 12 weeks [of parental leave], are you" and explained that it would be problematic. For the same event, Defendant also chose a non-Kosher restaurant for dinner despite knowledge that Plaintiff was Kosher. As a result, Plaintiff was required to get his own food at a restaurant that was a 15-minute walk away from the dinner location.

31.     In March 2023, Defendant promoted Ken Chow to Vice President. Ken Chow then became the new staffer. Chow immediately worked to get Plaintiff staffed on new projects.

32.     During this time, Defendant also discriminatorily pushed back on Plaintiff's intended paternity leave. Thereafter, Defendant continued to make comments about Plaintiff's intended paternity leave.

33.     Accordingly, on March 9, 2023, Plaintiff engaged in protected activity on two separate occasions by reporting the situation regarding the comments about his paternity leave to Human Resources. Human Resources assured Plaintiff that taking twelve (12 ) weeks of leave would not affect his compensation and that he would not be retaliated against.

34.     On March 10, 2023, Plaintiff submitted a Paid Family Leave ("PFL") and FMLA claim to Lincoln Financial, who confirmed receipt and that Defendant was notified of the leave request.

35.     On March 16, 2023, Chow informed Plaintiff that Manager Adam Frapart was notified of Plaintiff's parental leave request and that Melconian was questioning when exactly Plaintiff's leave would begin. Pursuant to the conversation he had with Melconian, Chow then suggested that Plaintiff not take the full twelve (12) weeks of leave, and instructed him when to take said leave as it "could be a problem."

36.      On March 27, 2023, just mere weeks after Plaintiff complained to Human Resources and submitted a formal parental leave request, Defendant retaliated against Plaintiff by terminating his employment effective April 30, 2023, days before Plaintiff indicated his leave would actually start, on the pretextual basis that it was eliminating his role due to a "reduction in force" and claimed that his termination "was not a reflection" of Plaintiff. However, Plaintiff was the only person from a coverage team in AIBC affected by the purported "reduction in force."

Significantly, on the same date, during an Industrials Team call, senior management explicitly stated that they were seeking to hire qualified individuals. Defendant refused to consider Plaintiff for an open position on the Healthcare Team despite the fact that the team previously hired another associate from another coverage team within AIBC and the role being identical in all aspects to Plaintiff's current position. A few weeks later, Defendant hired another individual on the Industrials Team despite claiming that the Industrial budget was the basis for Plaintiff's termination.

37.      Evidently, Defendant unlawfully terminated Plaintiff's employment due to its discriminatory and retaliatory animus against him based upon his religious faith and familial status, as well as his engagements in protected activity when he reported his managers' discriminatory commentary concerning his parental leave and formally requested parental leave.

38.      Based on the foregoing, Defendant unlawfully discriminated against Plaintiff based upon his religion and familial status. Following Plaintiff's engagements in protected activity when he complained about the discrimination to which he was subjected in connection with his familial status and submitted a formal parental leave request, Defendant unlawfully retaliated against Plaintiff by terminating his employment on the pretextual basis that it eliminated his role. Furthermore, Defendant failed to consider Plaintiff for a role in which he was previously employed due to its discriminatory and retaliatory animus against him.

39.      Defendant subjected Plaintiff to disparate treatment in the terms and conditions of his employment as compared to similarly situated non-Jewish employees who were not parents and/or did not engage in protected activity by reporting and/or opposing discrimination. Defendant's actions substantially interfered with Plaintiff's employment.

40.     As a result of Defendant's unlawful discriminatory and retaliatory practices, Plaintiff has suffered and continues to suffer significant financial ramifications, humiliation, outrage, and mental anguish.

**AS A FIRST CAUSE OF ACTION FOR DISCRIMINATION
AGAINST DEFENDANT UNDER
TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**

41.     Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

42.     Defendant's discrimination concerned one of the activities protected by Title VII of the Civil Rights Act of 1964, Section 2000e-2.

43.     Title VII of the Civil Rights Act of 1964, Section 2000e-2, Section 703 "Employer Practices" states: "It shall be an unlawful employment practice for an employer – (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

44.     Defendant engaged in an unlawful practice by discriminating against Plaintiff based upon his religion.

45.     Plaintiff is a member of a protected class pursuant to Title VII of the Civil Rights Act of 1964, Section 2000e-2, namely Plaintiff is a Jewish male.

46.     Plaintiff possessed proper qualifications for Defendant to continue his employment as a Second Year Investment Banking Associate. Particularly, in Plaintiff's 2022 performance review, Defendant noted that Plaintiff "has exhibited strong technical skills and knowledgeable enough to support others with questions…has demonstrated ability to rise to the new role…mentoring and leading analysts…[i]n addition, he is providing ideas on projects and

meetings to seniors as well as always seeking to collaborate with colleagues…to make sure all ideas and viewpoints are considered…[h]e is also ensuring that his attitude and behavior aligns with HSBC [Defendant] values, valuing collaboration…especially with different viewpoints, taking responsibility and getting work done.  Ultimately Plaintiff was rated as a "Good Performer" in his 2022 performance rating.

47.     Defendant and/or its agents subjected Plaintiff to adverse action by, among other things, subjecting him to disparate treatment in the terms and conditions of his employment as compared to his similarly situated non-Jewish colleagues; reducing his staffing and assigning Plaintiff less attractive work than his non-Jewish colleagues, issuing Plaintiff the lowest bonus on the team based upon pretextual performance-related accusations, denying Plaintiff's accommodation requests for Kosher food options, and ultimately terminating Plaintiff's employment on the pretextual basis that his position was being eliminated due to "reduction in force".  Furthermore, Plaintiff was the only person from a coverage team in AIBC affected by the purported "reduction in force."   Significantly, on the same date of Plaintiff's termination, Defendant was seeking qualified individuals for an open position on the Healthcare Team; however, Defendant refused to consider Plaintiff for the position  due to its discriminatory animus against him. Defendant ultimately hired an individual to replace Plaintiff just a few weeks after Defendant terminated Plaintiff's employment.

48.     As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of Title VII of the Civil Rights Act of 1964, Section 2000e-3, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits for which he is entitled to an award of monetary damages and other relief.

49.     As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of Title VII of the Civil Rights Act of 1964, Section 2000e-2, Plaintiff suffered and continues to suffer mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, depression, loss of self-esteem and self-confidence, emotional pain, and suffering, for which he is entitled to an award of monetary damages and other relief.

### AS A SECOND CAUSE OF ACTION
### FOR DISCRIMINATION AGAINST DEFENDANT
### UNDER THE NEW YORK STATE HUMAN RIGHTS LAW

50.     Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

51.     Defendant's discrimination concerned activities protected by New York Executive Law § 296.

52.     The New York State Human Rights Law, N.Y. Exec. Law § 296 provides, in pertinent part: "It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, familial status, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

53.     Plaintiff is a member of a protected class pursuant to N.Y. Exec. Law § 296, namely Plaintiff is a Jewish male who has children.

54.      Defendant engaged in an unlawful practice by discriminating against Plaintiff because of his religion and familial status.

55.    Plaintiff possessed proper qualifications for Defendant to continue his employment as a Second Year Investment Banking Associate. Particularly, in Plaintiff's 2022 performance review, Defendant noted that Plaintiff "has exhibited strong technical skills and knowledgeable enough to support others with questions…has demonstrated ability to rise to the new role…mentoring and leading analysts…[i]n addition, he is providing ideas on projects and meetings to seniors as well as always seeking to collaborate with colleagues…to make sure all ideas and viewpoints are considered…[h]e is also ensuring that his attitude and behavior aligns with HSBC [Defendant] values, valuing collaboration…especially with different viewpoints, taking responsibility and getting work done.  Ultimately Plaintiff was rated as a "Good Performer" in his 2022 performance rating.

56.    Defendant and/or its agents subjected Plaintiff to adverse action by, among other things, subjecting him to disparate treatment in the terms and conditions of his employment as compared to his similarly situated non-Jewish colleagues; reducing his staffing and assigning Plaintiff less attractive work than his non-Jewish colleagues, issuing Plaintiff the lowest bonus on the team based upon pretextual performance-related accusations, denying Plaintiff's accommodation requests for Kosher food options, and ultimately terminating Plaintiff's employment on the pretextual basis that his position was being eliminated due to "reduction in force".  Furthermore, Plaintiff was the only person from a coverage team in AIBC affected by the purported "reduction in force."  Significantly, on the same date of Plaintiff's termination, Defendant was seeking qualified individuals for an open position on the Healthcare Team; however, Defendant refused to consider Plaintiff for the position  due to its discriminatory animus against him. Defendant ultimately hired an individual to replace Plaintiff just a few weeks after Defendant terminated Plaintiff's employment.

57.     As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of N.Y. Exec. Law §296, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits for which he is entitled to an award of monetary damages and other relief.

58.     As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of N.Y. Exec. Law §296, Plaintiff suffered and continues to suffer mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, depression, loss of self-esteem and self-confidence, emotional pain, and suffering, for which he is entitled to an award of monetary damages and other relief.

### AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION AGAINST DEFENDANT UNDER THE NEW YORK CITY HUMAN RIGHTS LAW

59.     Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

60.     Plaintiff is a member of a protected class pursuant to New York City Human Rights Law, N.Y. Admin. Code § 8-107, namely, Plaintiff is a Jewish male with children.

61.     Defendant and/or its agents intended to discriminate against Plaintiff on the basis that he is male, identifies as Jewish, and practices Judaism.

62.     Defendant's discrimination against Plaintiff concerned activities protected by N.Y. Admin. Code § 8-107.

63.     The New York City Human Rights Law, N.Y. Admin Code § 8-107 provides, in pertinent part: "It shall be an unlawful discriminatory practice: (a) For an employer or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, caregiver status, sexual orientation, uniformed service

or alienage or citizenship status of any person: (i) To represent that any employment or position is not available when in fact it is available; (ii) To refuse to hire or employ or to bar or to discharge from employment such person; or (iii) To discriminate against such person in compensation or in terms, conditions, or privileges of employment."

64.     Plaintiff possessed proper qualifications for Defendant to continue his employment as a Second Year Investment Banking Associate. Particularly, in Plaintiff's 2022 performance review, Defendant noted that Plaintiff "has exhibited strong technical skills and knowledgeable enough to support others with questions…has demonstrated ability to rise to the new role…mentoring and leading analysts…[i]n addition, he is providing ideas on projects and meetings to seniors as well as always seeking to collaborate with colleagues…to make sure all ideas and viewpoints are considered…[h]e is also ensuring that his attitude and behavior aligns with HSBC [Defendant] values, valuing collaboration…especially with different viewpoints, taking responsibility and getting work done.  Ultimately Plaintiff was rated as a "Good Performer" in his 2022 performance rating.

65.     Defendant and/or its agents subjected Plaintiff to adverse action by, among other things, subjecting him to disparate treatment in the terms and conditions of his employment as compared to his similarly situated non-Jewish colleagues; reducing his staffing and assigning Plaintiff less attractive work than his non-Jewish colleagues, issuing Plaintiff the lowest bonus on the team based upon pretextual performance-related accusations, denying Plaintiff's accommodation requests for Kosher food options, and ultimately terminating Plaintiff's employment on the pretextual basis that his position was being eliminated due to "reduction in force".  Furthermore, Plaintiff was the only person from a coverage team in AIBC affected by the purported "reduction in force."  Significantly, on the same date of Plaintiff's termination,

Defendant was seeking qualified individuals for an open position on the Healthcare Team; however, Defendant refused to consider Plaintiff for the position due to its discriminatory animus against him. Defendant ultimately hired an individual to replace Plaintiff just a few weeks after Defendant terminated Plaintiff's employment.

66.     As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of N.Y. Admin Code § 8-107, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits for which he is entitled to an award of monetary damages and other relief.

67.     As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of N.Y. Admin Code § 8-107, Plaintiff suffered and continues to suffer mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, depression, loss of self-esteem and self-confidence, emotional pain, and suffering, for which he is entitled to an award of monetary damages and other relief.

## AS A FOURTH CAUSE OF ACTION FOR RETALIATION AGAINST DEFENDANT UNDER THE NEW YORK STATE HUMAN RIGHTS LAW

68.     Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

69.     New York Executive Law § 296(7) prohibits discrimination and retaliation.

70.     The New York State Human Rights Law, N.Y. Exec. Law § 296(7) provides, in pertinent part that, "It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or

she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article."

71.    Defendant's employment practices as alleged at length herein constitute impermissible acts of retaliation in violation of New York Executive Law § 296(7). The stated reasons for Defendant's conduct were not the true reasons but served as a pretext to conceal Defendant's retaliatory animus against Plaintiff.

72.    On March 9 and 10, 2023, Plaintiff engaged in protected activity on two separate occasions by reporting the discriminatory actions to which he was subjected in connection with his request for parental leave and by formally requesting parental leave.

73.    Defendant was aware of Plaintiff's engagements in protected activity as Plaintiff complained directly to Human Resources and submitted his parental leave request to Lincoln Financial. Plaintiff also received confirmation that his direct managers were notified of his parental leave request.

74.    On March 27, 2023, just mere weeks after Plaintiff complained to Human Resources and submitted his parental leave request, Defendant retaliated against Plaintiff by terminating his employment effective April 30, 2023, on the pretextual basis that it was eliminating his role due to a " reduction in force." However, Plaintiff was the only person from a coverage team in AIBC affected by the purported "reduction in force."  Defendant was seeking qualified individuals for an open position on the Healthcare Team; however, Defendant refused to consider Plaintiff for the position  due to its discriminatory and retaliatory animus against him. Defendant ultimately hired an individual to replace Plaintiff just a few weeks after Defendant terminated Plaintiff's employment.

75.     As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of New York Executive Law § 296(7), Plaintiff has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits for which he is entitled to an award of monetary damages and other relief.

76.     As a direct and proximate result of Defendant's unlawful and retaliatory conduct in violation of New York Executive Law § 296(7), Plaintiff suffered and continues to suffer mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress and anxiety, depression, loss of self-esteem and self-confidence, emotional pain, and suffering, for which he is entitled to an award of monetary damages and other relief.

### AS AN FIFTH CAUSE OF ACTION FOR RETALIATION AGAINST DEFENDANT UNDER THE NEW YORK CITY HUMAN RIGHTS LAW

77.     Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

78.     The New York City Human Rights Law, N.Y. Admin Code § 8-107 prohibits discrimination and retaliation.

79.     The New York City Human Rights Law, N.Y. Admin. Code § 8-107(7) provides in pertinent part that, "It shall be an unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter, (ii) filed a complaint, testified or assisted in any proceeding under this chapter, (iii) commenced a civil action alleging the commission of an act which would be an unlawful discriminatory practice under this chapter . . . The retaliation or discrimination complained of under this subdivision need not result

in an ultimate action with respect to employment… in a materially adverse change in the terms and conditions of employment…provided, however, that the retaliatory or discriminatory act or acts complained of must be reasonably likely to deter a person from engaging in protected activity."

80.     Defendant's employment practices as alleged at length herein constitute impermissible acts of retaliation in violation of N.Y. Admin. Code § 8-107(7). The stated reasons for Defendant's conduct were not the true reasons but served as a pretext to conceal Defendant's retaliatory animus against Plaintiff.

81.     On March 9 and 10, 2023, Plaintiff engaged in protected activity on two separate occasions by reporting the discriminatory actions to which he was subjected in connection with his request for parental leave and by formally requesting parental leave.

82.     Defendant was aware of Plaintiff's engagements in protected activity as Plaintiff complained directly to Human Resources and submitted his parental leave request to Lincoln Financial. Plaintiff also received confirmation that his direct managers were notified of his parental leave request.

83.     On March 27, 2023, just mere weeks after Plaintiff complained to Human Resources and submitted his parental leave request, Defendant retaliated against Plaintiff by terminating his employment effective April 30, 2023, on the pretextual basis that it was eliminating his role due to a " reduction in force." However, Plaintiff was the only person from a coverage team in AIBC affected by the purported "reduction in force."  Defendant was seeking qualified individuals for an open position on the Healthcare Team; however, Defendant refused to consider Plaintiff for the position  due to its discriminatory and retaliatory animus against him.  Defendant

ultimately hired an individual to replace Plaintiff just a few weeks after Defendant terminated Plaintiff's employment.

84.     As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of N.Y. Admin Code § 8-107(7), Plaintiff has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits for which he is entitled to an award of monetary damages and other relief.

85.     As a direct and proximate result of Defendant's unlawful and retaliatory conduct in violation of N.Y. Admin. Code § 8-107(7), Plaintiff suffered and continues to suffer mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress and anxiety, depression, loss of self-esteem and self-confidence, emotional pain, and suffering, for which he is entitled to an award of monetary damages and other relief.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendant:

A.     Declaring that Defendant engaged in unlawful employment practices prohibited by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, *et seq.*, the New York State Human Rights Law, N.Y. Exec. Law 290. *et seq.*, and the New York City Human Rights Law, N.Y. Admin Code 8-107, *et seq.* by discriminating against Plaintiff on the basis of his religion and familial status and retaliating against Plaintiff following his engagements in protected activity;

B.     Awarding damages to Plaintiff, resulting from Defendant's discriminatory and retaliatory actions and unlawful termination of Plaintiff's employment and to otherwise make him whole for any losses suffered as a result of such unlawful employment practice;

C.     Awarding Plaintiff compensatory damages for lost wages, mental, emotional, and physical

injury, distress, pain and suffering and injury to his reputation in an amount to be proven;

D.       Awarding Plaintiff punitive damages;

E.       Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the

action; and

F.       Awarding Plaintiff such other and further relief as the Court may deem equitable, just, and

proper to remedy the Defendant's unlawful employment practices.

Dated: September 11, 2023
          New York, New York

                              **WHITE & HILFERTY**

                              */s/Samantha E. Hudler*
                              Samantha E. Hudler
                              Michael P. Hilferty
                              *Attorneys for Plaintiff*
                              757 Third Avenue, 20th Floor
                              New York, New York 10017
                              (917) 565-8763

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

MICHAEL KRANTZ,

                     Plaintiff,

**VERIFICATION**

        -against-

HSBC SECURITIES (USA) INC.,

                   Defendant.
-------------------------------------------------------------------X

MICHAEL KRANTZ, pursuant to the provisions of 28 U.S.C. 1746, declares the following

under penalty of perjury that the foregoing is true and correct:

        1.     I am the Plaintiff herein.

        2.     I have read the foregoing Complaint and know the content thereof, that the same is

of my own knowledge except as to the matters therein stated upon information and belief; and that

as to those matters, I believe the same to be true.

Executed:    New York, New York
                September 12, 2023

                                                    **Michael Krantz, Plaintiff**

21